# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WALKER**, as guardian ad litem for K.B., a minor,<br><br>    Plaintiff,<br><br>  v.<br><br>**PORTLAND PUBLIC SCHOOL DISTRICT NO. 1J**, an Oregon public school, **FIRST STUDENT, INC.**, an Ohio corporation, **SUSAN KOSMALA**, **MICHAEL LAFRAMBOISE**, and **JOHN GRAPPONE**,<br><br>    Defendants. | Case No. 3:21-cv-01349-IM<br><br>**OPINION AND ORDER** |

Kimberly Hope Sherman, Education, Environmental, & Estate Law Group LLC, P.O. Box 728, Eugene, OR 97440. Attorney for Plaintiff.

J. Michael Porter and Souvanny Miller, Miller Nash LLP, 111 SW Fifth Avenue, Suite 3400, Portland, OR 97204. Attorneys for Defendants Portland Public School District No. 1J, Susan Kosmala, and Michael LaFramboise. Robert E. Barton, Bullivant Houser Bailey PC, 1 SW Columbia Street, Suite 800, Portland, OR 97204. Attorney for Defendant First Student, Inc.

**IMMERGUT, District Judge.**

  Jamoia Walker brings this action as the guardian ad litem for K.B.,[1] a minor child, who

---

[1] For ease of reference, this Court refers to K.B. as "Plaintiff" in this Opinion.

attended school in Portland Public School District No. 1J ("PPS"). This matter comes before this Court on Motions to Dismiss the Amended Complaint ("Complaint"), ECF 24, filed by Defendants PPS, Susan Kosmala, and Michael LaFramboise (collectively, "PPS Defendants"), ECF 27, and by Defendant First Student, Inc. ("First Student"), ECF 30. This Court GRANTS IN PART and DENIES IN PART First Student's Motion to Dismiss, ECF 30, and GRANTS PPS Defendants' Motion to Dismiss, ECF 27. This Court GRANTS leave to amend as to certain claims, and Plaintiff has fourteen days from this issuance of this Opinion to cure the specific deficiencies identified herein. As explained below, this Court also reserves ruling on Plaintiff's motion to deem service on Grappone sufficient, ECF 20, and orders supplemental briefing.[2]

## STANDARDS

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[2] This Court finds oral argument would not be helpful to the Court's resolution of this matter, and denies Defendants' request for oral argument. *See* LR 7-1(d)(1).

## BACKGROUND

This case arises out of the alleged mistreatment Plaintiff suffered while riding a school bus on October 4, 2016.[3] At that time, Plaintiff was a second-grade student enrolled in the Pioneer Behavior Program, a public-school placement program within Buckman Elementary School and Portland Public School District No. 1J. ECF 24 at ¶¶ 3, 7–8, 20. Plaintiff received special education services and had multiple disabilities, including autism, emotional disturbances, behavioral disorders, and difficulty communicating. *Id*. at ¶¶ 3, 20. Plaintiff was assigned to Bus 411/Route 451 ("bus") for transportation to and from school beginning in September 2016, when he began second grade. *Id*. at ¶ 26. The bus was operated by First Student through a contract with PPS and was driven by Grappone, a First Student employee. *Id*. at ¶¶ 5– 6. During September, Jamoia Walker, Plaintiff's guardian, became aware that other students on the bus were bullying Plaintiff. *Id*. at ¶ 27. On or about October 4, 2016, Grappone called Walker during Plaintiff's bus ride from school, reported that Plaintiff was "out of control," and informed Walker that she needed to meet the bus and remove Plaintiff from the bus. *Id*. at ¶ 29. Grappone then called Bus Dispatch and the police and requested that police officers meet the bus, which they did. *Id*. at ¶ 30. When Walker arrived at the scene, the bus had already left. *Id*. at ¶ 32. Walker called Bus Dispatch and asked if it "was the bus company's policy to call the police on a seven-year-old boy who was being bullied," and the dispatcher replied that it was. *Id*.

The bus was equipped with video surveillance. One video[4] purportedly shows other students teasing and taunting Plaintiff. *Id*. at ¶ 66. Eventually, Plaintiff leaves his seat and begins

---

[3] Though the exact date of the incident is unclear, for ease of reference, and consistent with the parties' briefing, this Court refers to the incident as occurring on October 4, 2016.

[4] Though the date of this recording is unclear, it appears to be from either September 20, 2016 or October 9, 2016. *Id*. at ¶ 65.

to hit another student. *Id*. At that point, Grappone pulls the bus over, picks up Plaintiff, and physically returns him to his seat. *Id*.; *see also id*. at ¶ 67 (noting Grappone did "not employ any approved methods of safe holds" and that his "voice and body language [were] amplified[,] aggressive and loud"). A second video purportedly shows the October 4, 2016 incident.[5] *Id*. at ¶ 68. During that bus ride, multiple students tease and taunt Plaintiff, and Grappone takes no action. *Id*. After about four minutes, Plaintiff says something to the students and yells; Grappone tells Plaintiff to "relax," but otherwise takes no further action. *Id*. at ¶ 69. The taunting continues, and eventually Plaintiff leaves his seat, and a fight ensues between Plaintiff and the other students. *Id*. at ¶ 71. Grappone stops the bus and "pulls [Plaintiff's] shoulders back to disengage [him] from the other student," but Plaintiff begins to struggle against Grappone and kick at him. *Id*. at ¶¶ 71–72. Grappone subsequently "lifts [Plaintiff] by his shoulders, picks him off of the bus bench where he had been standing, and forces [him] into the seat." *Id*. at ¶ 73. During this time, Plaintiff yells that Grappone is hurting him, and Grappone responds that he is not, that he is "just holding [Plaintiff's] legs down" and "restraining him very lightly on camera." *Id*. at ¶¶ 74–75. Police officers eventually arrive at the scene. *Id*. at ¶ 76. Plaintiff expresses concerns about an officer's gun and being shot. *Id*. A third video, likely also of the October 4 incident, shows Plaintiff being "subdued in his seat." *Id*. at ¶ 78.[6]

Walker was not informed of Grappone's conduct by First Student or PPS. *Id*. at ¶ 80. On or around October 4, 2016, Walker asked Susan Kosmala, Buckman Elementary School's

---

[5] Again, the date of this recording is unclear and it appears to be from either October 3 or October 4, 2016. *Id*. at ¶ 68.

[6] This video is identified as from October 3, 2016, but Plaintiff is wearing the same clothing as he was wearing in the second video and Grappone's call to the police is referenced in the video. *Id.* at ¶¶ 78–79.

principal, to provide her with the video surveillance of the bullying that took place on the bus *Id.* at ¶ 47. However, because the videos contained the faces and names of other students, Walker was told PPS could not release the videos to her, *id.*; nonetheless, Kosmala transcribed the videos for Walker and provided her with a transcription for a portion of the bus video dated October 4, 2016 on November 19, 2016, *id.* at ¶¶ 50–51. In March 2017, Michael LaFramboise, principal of the Pioneer Behavioral Program, provided Walker with two additional transcripts dated "10-9-2016" and "10-3-2016." *Id.* at ¶ 52. On March 24, 2017, Walker "formally requested that PPS preserve the videos relating to bus trips between September 26 and October 15, 2016" and any other videos that had been distributed to administrators regarding Plaintiff and incidents on the bus. *Id.* at ¶ 58. Despite reviewing these transcripts, Walker proceeded under the belief that Plaintiff's issues on the bus stemmed from bullying by other students, and not from Grappone's conduct. *Id.* at ¶¶ 41, 53–55.

Between December 21, 2019 and January 5, 2020, Plaintiff informed Walker that his bus driver had held him down, and that "he was pushed into the seat with his face down and arms behind his back two times." *Id.* at ¶ 60. On February 11, 2020, Walker renewed her request for video footage to PPS, *id.* at ¶ 62, and on or around May 28, 2020, she received the videos described above, which roughly aligned with the transcripts she had previously received, *id.* at ¶ 64.

Plaintiff brings a variety of federal and state law claims related to the bus incident. First, Plaintiff brings excessive force claims under 42 U.S.C. § 1983 and *Monell* against PPS, First Student, and Grappone (counts 1.1 and 1.2). *Id.* at ¶¶ 101–32. Second, Plaintiff brings deliberate indifference claims under 42 U.S.C. § 1983 and *Monell* against PPS, First Student, and Grappone (counts 2.1 and 2.2), and supervisory liability claims against Kosmala and LaFramboise (count

2.3). *Id*. at ¶¶ 133–77. Third, Plaintiff brings negligence claims against PPS, First Student, and Grappone (counts 3.1 and 3.2). *Id*. at ¶¶ 178–96. Fourth, Plaintiff brings assault and battery claims against First Student and Grappone (counts 4.1 and 4.2). *Id*. at ¶¶ 197–222. Fifth, Plaintiff brings claims of abuse of a vulnerable person against First Student and Grappone (counts 5.1 and 5.2). *Id*. at ¶¶ 223–71. Sixth, Plaintiff brings claims of intentional infliction of emotional distress against First Student and Grappone (counts 6.1 and 6.2). *Id*. at ¶¶ 272–300. Seventh, and finally, Plaintiff brings claims of evidence spoliation and fraudulent concealment of evidence against PPS (counts 7.1 and 7.2). *Id*. at ¶¶ 301–20. Plaintiff seeks monetary damages and injunctive relief. *Id*. at 57–60.

## DISCUSSION

### A.  Defendant First Student

Plaintiff asserts federal § 1983 and state law claims against First Student. First Student seeks dismissal and raises a number of defenses to the claims against it pursuant Federal Rules of Procedure 8, 10 and 12. Each is addressed below.

### 1.  Rule 8

First Student seeks dismissal of the Complaint and an order that Plaintiff must amend on the basis that the Complaint is a "shotgun pleading" in violation of Rule 8. ECF 30 at 6–8.

Rule 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Complaints fail under Rule 8 when they are "argumentative, prolix, replete with redundancy, and largely irrelevant." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996); *id*. at 1178 (noting that even a "heighted pleading standard is not an invitation to disregard[ ] Rule 8's requirement"). However, dismissals under Rule 8 are

"usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (internal quotation marks and citation omitted). Whether to dismiss a complaint on Rule 8 grounds is within the district court's discretion. *See McHenry*, 84 F.3d at 1177–78.

First Student argues that "when a complaint blurs the allegations against each defendant by realleging all prior paragraphs, the complaint ceases to be a short and plain statement, and instead morphs into . . . a 'shotgun' complaint or pleading" subject to dismissal. ECF 30 at 4. First Student is correct that Plaintiff's Complaint incorporates by reference prior paragraphs multiple times throughout. *See, e.g.*, ECF 24 at ¶ 101. This Court agrees this results in some redundant and irrelevant pleading. But this does not warrant dismissal for violating Rule 8. Plaintiff's Complaint is "logically organized" and presents "enumerated legal claims, each of which lists the liable Defendants and legal basis therefor." *Hearns*, 530 F.3d at 1132. It is not unintelligible, and mere "verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." *Id*. at 1131. The cases cited by First Student do not convince this Court otherwise.

In *Destfino v. Reiswig*, 630 F.3d 952, 954 (9th Cir. 2011), "[p]laintiffs sued twenty-nine individuals, ten businesses and a church in state court, alleging that defendants used a bogus debt elimination and tax avoidance scheme to bilk them out of tens of thousands of dollars." The Ninth Circuit affirmed the district court's dismissal for violation of Rules 8(a) and 9(b), where the complaint was a "shotgun pleading" which failed to "state[ ] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights," and "lump[ed]" defendants together. *Id*. at 958–59 (internal quotation marks omitted).

In *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1293 (11th Cir. 2018), the Eleventh Circuit affirmed the district court's dismissal of a "shotgun" pleading on Rule 8 grounds. There, the plaintiff's second amended complaint spanned 70 pages with 160 pages of exhibits, contained duplicative allegations, "labeling and numerical inconsistencies," and "fail[ed] to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in." *Id*. at 1294 (internal quotation marks and citation omitted). The present case is distinguishable from the cited cases. While Plaintiff's Complaint is long and pleads counts against multiple defendants, it states how each defendant is alleged to have violated Plaintiff's rights. It is not overly redundant or duplicative, and it provides sufficient notice. That is not to say the allegations contained in Plaintiff's Complaint will survive on the merits, but the Complaint does not warrant dismissal under Rule 8. Accordingly, First Student's motion to dismiss on Rule 8 grounds is denied.[7]

### 2. Rule 12(e)

First Student also seeks a more definite statement under Rule 12(e). Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Motions for a more definite statement are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Sagan v. Apple Comput., Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). "Rule 12(e) is designed to strike at unintelligibility rather than want of detail." *Brooks v. Clyne*, No. 3:19-cv-

---

[7] For these same reasons, this Court also denies PPS Defendants' motion to dismiss for violation of Rule 8(a). *See* ECF 27 at 29.

This Court also notes that First Student did not seek dismissal on Rule 12(b)(6) grounds as to any of the other claims against it, including counts 1.1, 1.2, and 3.1.

02085-HZ, 2021 WL 359733, at *13 (D. Or. Jan. 31, 2021). These motions are generally disfavored, left to the court's discretion, and rarely granted. *See Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1147 (N.D. Cal. 2015).

This Court finds a more definite statement is unwarranted, except as to Claim 2 (deliberate indifference). This Court agrees that Plaintiff's Complaint is long and at times redundant. Overall, the Complaint is not unintelligible, and it is not so indefinite that First Student cannot ascertain the nature of the claims being asserted against it—except as to those claims contained in counts 2.1 and 2.2. *See Holdner v. Coba*, No. CIV. 09-979-AC, 2010 WL 678112, at *1 (D. Or. Feb. 25, 2010) (explaining "the proper test is to determine 'whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings.'" (citation omitted)). As to counts 2.1 and 2.2, the pleading is sufficiently ambiguous such that First Student cannot properly respond, as it is unclear why Plaintiff cites to the Fourth Amendment, rather than the Fourteenth, as the basis for the claim. Plaintiff appears to concede that this was error. *See* ECF 44 at 15. Ambiguity regarding which constitutional provision governs prevents First Student from formulating a complete and accurate responsive pleading.

Accordingly, the motion for a more definite statement is granted in part and denied in part. Plaintiff has fourteen days from the issuance of this order to file either a revised version of the Complaint, or file a Second Amended Complaint, addressing the deficiencies.[8]

### 3.  Rule 12(f)

"The court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Whether to grant a motion

---

[8] Because this Court has granted First Student's motion for a more definite statement as to counts 2.1 and 2.2, this Court declines to address First Student's Rule 12(b)(6) motion seeking dismissal of these counts. *See* ECF 30 at 8–10.

to strike is within the district court's discretion, and such motions "are viewed with disfavor and are infrequently granted." *Brooks*, 2021 WL 359733, at *13; *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor [ ] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (internal quotation marks and citation omitted)).

First Student argues that "rhetorical devices" and references to race that imply Grappone's conduct was racially motivated should be stricken. ECF 30 at 10–11. First Student also seeks to strike references to Plaintiff's diagnosis of autism, which occurred after the events at issue in this case. *Id*. at 11–12. This Court finds unpersuasive First Student's assertion that these statements are irrelevant, prejudicial, or otherwise redundant, immaterial, impertinent or scandalous, and declines to strike them. Defendant First Student's Motion to Strike is denied.

### 4. **Rule 10**

First Student asserts that the Complaint violates Rule 10(b) and warrants dismissal. ECF 30 at 2, 10. Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). First Student takes issue with certain paragraphs that contain multiple related sentences and factual allegations. ECF 30 at 10. But as this Court has stated above, the Complaint is not unintelligible and it provides First Student with sufficient notice of the nature of the claims against it. First Student, moreover, has not cited any cases indicating that pleading in such a form requires dismissal or amendment. The Rule itself appears to contemplate that multiple related facts may be pleaded in one paragraph. *See* Fed R. Civ. P. 10(b) (noting each paragraph should be "limited as far as practicable to a single set of circumstances"); *cf. Banks v. Berge*, No. 3:16-cv-02129-AA, 2017 WL 1428709, at *1 (D. Or. Apr. 17, 2017) (denying Rule 10(b) challenge

where the "Complaint uses numbered paragraphs"). First Student's motion to dismiss for violation of Rule 10 is denied.

**B.  Defendants PPS, Kosmala, and LaFramboise**

Plaintiff asserts federal § 1983 claims, as well as state law claims against PPS Defendants. Defendants move to dismiss all claims against them. PPS Defendants' arguments are addressed in turn, below.

### 1.  42 U.S.C. § 1983[9]

Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendants PPS, Kosmala, and LaFramboise for excessive force and deliberate indifference. *See generally* ECF 24. PPS Defendants seek to dismiss all of the § 1983 claims against them for failure to state a claim. They argue first that Plaintiff fails to allege any misconduct attributable to PPS Defendants; second, as to PPS, that Plaintiff fails to allege a policy, practice, or custom to hold PPS liable under *Monell*; and third, that Kosmala and LaFramboise are entitled to qualified immunity. ECF 27 at 18. In response, Plaintiff asserts that PPS Defendants are liable for the misconduct based on "Official Policy theory," "Entwinement theory," and/or "State Function theory," and that Kosmala and LaFramboise can properly be held personally liable under § 1983. ECF 38 at 7.

This Court finds that dismissal is proper against PPS Defendants on the § 1983 claim because plaintiff has failed to adequately state a claim for liability. However, since Plaintiff may be able to cure the pleading deficiencies identified herein by stating new, more precise, or different facts in an amended complaint, the Court grants leave to amend. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other

---

[9] This Court considers in this section counts 1.1, 2.1, and 2.3.

facts."). Plaintiff has fourteen days from the issuance of this order to file a Second Amended Complaint, addressing the deficiencies outlined below.

### a. Kosmala and LaFramboise

To state a claim under § 1983, a plaintiff must allege that "(1) acts by the defendants (2) under color of state law (3) depriv[ed] [him] of federal rights, privileges or immunities [and] (4) caus[ed] [him] damage." *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotation marks omitted) (quoting *Albright v. Oliver,* 510 U.S. 266, 271 (1994)). "Accordingly, the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States." *Id.* Further, "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Because there is no respondeat superior liability under § 1983, and Kosmala and LaFramboise are not alleged to have personally participated in the misconduct on the bus, they may be held liable under §1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). The Ninth Circuit has explained that "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his

acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (internal quotation marks and citation omitted). "[T]he claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (internal quotation marks and citation omitted).

Kosmala and LaFramboise argue that they are not liable on a theory of supervisory liability. ECF 27 at 21. Plaintiff contends that because Kosmala and LaFramboise exercised authority over Grappone and the conditions on the bus, they personally participated in the alleged constitutional violation by failing to appropriately train Grappone, place an aide on the bus, or inform Walker. ECF 38 at 15–16. Moreover, Plaintiff alleges they acquiesced to Grappone's conduct and showed callous indifference to Plaintiff's rights. *Id*. at 16.

None of the allegations suggest that LaFramboise knew or should have known about Grappone's conduct toward Plaintiff until after the October 4, 2016 incident occurred. The Complaint does not allege any participation or knowledge by LaFramboise before the October 4, 2016 incident. In fact, there is no allegation that anyone, including Plaintiff or Walker, spoke with LaFramboise until March 2017, when he provided Walker with transcripts of video footage from October 2016. ECF 24 at ¶ 52. There is no allegation he regularly watched video surveillance from the bus or that Grappone or anyone else communicated with him about issues with controlling student behavior on the bus. The Complaint only makes conclusory allegations that LaFramboise failed to train, supervise, or support Grappone which directly caused the

alleged unconstitutional conduct. *See id*. at ¶ 173. In fact, Plaintiff concedes that he does not yet know "[w]hether Kosmala and Laframboise had direct or tangential supervisory authority over Grappone." ECF 38 at 16. The allegations are too speculative and do not suffice to state a claim for supervisory liability as to LaFramboise. *See Iqbal*, 556 U.S. at 678 (explaining that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555)); *Keates*, 883 F.3d at 1243 (finding allegations that a defendant "promulgated unconstitutional policies and procedures which authorized the particular conduct . . . and thus directly caused [another defendant's] allegedly unconstitutional conduct" were insufficient to state a claim of supervisory liability).

The same holds true for Kosmala. There are no facts in the Complaint that Kosmala knew of any alleged constitutional violations or misconduct on the bus before, at earliest, September 2016. *See* ECF 24 at ¶¶ 40–41 (alleging that "following the incidents on the bus in September and October 2016," Walker "asked [Kosmala] to place an aide on the bus"). The Complaint does not allege that Kosmala failed to act; rather, it alleges that she stated she was looking into it. *Id*. at ¶ 41. Moreover, even if Kosmala was aware of student bullying on the bus in September, the Complaint does not allege that she had any reason to believe the bus driver was involved in misconduct. There are no allegations that anyone communicated with Kosmala about issues on the bus prior to, at earliest, September 2016, when Kosmala reported she was looking into a bus aide. *Id*. The remaining allegations are conclusory and therefore insufficient to state a claim.

### i.  Qualified Immunity

Nevertheless, even if this Court were to find for Plaintiff on the issue of supervisory liability, Plaintiff has failed to show why Kosmala and LaFramboise are not entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73 (2017) (per curiam) (internal quotation marks and citation omitted). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity is, however, an immunity only from a suit for damages, not for declaratory or injunctive relief. *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). "To overcome qualified immunity, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). The plaintiff bears the burden of showing the right was clearly established. *Id.* The Ninth Circuit has explained that "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* [defendants] *in this case* that *their particular conduct* was unlawful." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (explaining that "the prior precedent must be 'controlling'— from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction" (citation omitted)).

Plaintiff has not met this burden. None of the cases cited by Plaintiff match the facts or issues presented here. *See* ECF 38 at 13–15. In *Preschooler II*, the plaintiff was subject to physical and emotional abuse by a teacher and alleged that school officials "abdicated their duty to report and discipline [the teacher] when they first became aware of the alleged abuses." 479 F.3d at 1183. The Ninth Circuit found that the school officials were not protected by qualified immunity. The particular conduct at issue in *Preschooler II* differs from that in the instant case. As explained, Plaintiff has not alleged that Kosmala or LaFramboise knew of Grappone's

conduct toward Plaintiff and failed to act. Moreover, *Preschooler II* involved the alleged misconduct of a teacher and the supervisory liability of her direct supervisors, a superintendent, administrative personnel, and principal. *Id*. at 1182. Plaintiff, however, concedes that he cannot say the extent of authority Kosmala or LaFramboise even exercised over Grappone. ECF 38 at 16.

In *Doe ex rel. Doe v. Hawaii Department of Education*, the Ninth Circuit considered whether an elementary school vice principal who taped a student's head to a tree violated that student's Fourth Amendment rights. 334 F.3d 906, 907 (9th Cir. 2003). The court found a Fourth Amendment violation, *id.* at 909, as well as a clearly established right, explaining "the right of a student to be free from excessive force at the hands of teachers employed by the state was clearly established as early as 1990," *id*. at 910. Unlike the instant case, which considers conduct by a bus driver and supervisory liability for school employees, *Doe* dealt with liability for a school employee who personally participated in the misconduct. The statement of clearly established law does not clearly place the question of Kosmala and LaFramboise's liability "beyond debate." *See Hughes*, 31 F.4th at 1223; *see also Martin for C.M. v. Hermiston Sch. Dist. 8R*, 499 F. Supp. 3d 813, 842 (D. Or. 2020) ("The Supreme Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" (citation omitted)). Similarly, the issue in *P.B. v. Koch*, 96 F.3d 1298, 1299 (9th Cir. 1996), was whether a principal could be held liable for his own use of force against students.

Plaintiff also cites cases from the District of Arizona[10] and the Northern District of

---

[10] *Rodriguez v. Casa Grande Elementary Sch. Dist. No. 4*, No. CV10-1904-PHX-DGC, 2010 WL 4629914 (D. Ariz. Nov. 8, 2010).

California,[11] ECF 38 at 14–16, which are neither controlling nor reflective of a consensus of persuasive authorities. *See Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019) (noting that "unpublished district court decisions" will rarely demonstrate that the law is clearly established).[12]

### b.  PPS – *Monell* Liability

The Supreme Court has held that in certain circumstances, a municipality may be held liable under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978) (holding that municipality is considered a "person" under 42 U.S.C. § 1983). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, "[p]ursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell*, 436 U.S. at 690–91).

To prevail on a municipal liability claim under 42 U.S.C § 1983, a plaintiff must show that a municipal custom or policy caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694. To establish *Monell* liability caused by a government policy or longstanding practice

---

[11] *V.S. by & through Sisneros v. Oakland Unified Sch. Dist.*, No. 14-CV-05144-JST, 2015 WL 3463475 (N.D. Cal. May 28, 2015).

[12] The facts of these cases are also distinguishable from those of the present case. In *V.S.*, Plaintiff sought to hold the school district liable for misconduct that occurred on a school bus. 2015 WL 3463475, at *1. However, in that case, the plaintiff alleged that the bus driver informed the plaintiff's father as well as the school district of her inability to prevent bullying on the bus. *Id.* Despite these warnings, the school district took no action, and the court determined the plaintiff adequately stated a claim under § 1983 for violations of the Equal Protection and Due Process Clauses against the school district. *Id.* at *3–4. In *Rodriguez*, the court considered whether a bus aide was liable under § 1983 for conduct that occurred on a school bus. 2010 WL 4629914, at *1. The court noted that "personal participation of a defendant in the unlawful act is required—mere presence at the scene is not sufficient," but explained that the bus aide was not only at the scene of the misconduct but participated in it. *Id.* at *3.

or custom, the plaintiff must show that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy, longstanding practice, or custom; (3) the policy, practice, or custom amounted to "deliberate indifference to the plaintiff's constitutional right;" and (4) the policy, practice, or custom was "the moving force behind the constitutional violation." *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citation omitted). "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (internal quotation marks and citation omitted).

*Monell* liability can also arise from a failure to train, supervise, or discipline that amounts to a deliberate indifference to individuals' constitutional rights. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). To show deliberate indifference, Plaintiff must demonstrate that the need "'for more or different' action 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)) (brackets in original).

Plaintiff asserts three theories of liability for PPS: official policy, entwinement, and state function. ECF 38 at 7. The latter two are, as Defendants point out, inapplicable to the circumstances presented here. *See* ECF 48 at 9–13.

### i. Entwinement and State Function Theories

As to Plaintiff's entwinement theory, Plaintiff cites *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 228 (2001), for the proposition that an ostensibly private entity can be so entwined with a public entity so as to be deemed a state actor for purposes of § 1983. ECF 38 at 10. This may be *Brentwood*'s holding, but it does not help Plaintiff state a claim against PPS because *Brentwood* does not stand for the proposition that a state actor who contracts with a private entity automatically assumes liability under § 1983 for the private entity's conduct. *See Brentwood*, 531 U.S. at 302 ("Entwinement will support a conclusion that *an ostensibly private organization* ought to be charged with a public character and judged by constitutional standards" (emphasis added)); ECF 48 at 10.

Plaintiff's reliance on *Boykins v. Trinity, Inc.*, No. 18-13931, 2021 WL 2156196 (E.D. Mich. May 27, 2021), is also misplaced. ECF 38 at 8. Plaintiff references the portion of *Boykins* which considers whether a private school bus company can be held liable under § 1983, *i.e.*, whether the private entity is a state actor. *See id.* at 10–11. Again, the court applied entwinement theory to determine whether a *private company* was liable under § 1983, not whether a *public entity* was liable. *See Boykins*, 2021 WL 2156196, at *5. Indeed, the *Boykins* court considered whether the public school district could be held liable for conduct that occurred on a school bus, but the court did so by considering—as this Court does below—whether the school district acted pursuant to a policy, practice, or custom. *Id*. at *3–5.[13]

---

[13] Further, Plaintiff's reliance on *B.F. v. Township of Hazlet*, No. A-0918-15T1, 2016 WL 7232370 (N.J. Super. Ct. App. Div. Dec. 14, 2016), is inapposite. Plaintiff cites this case for the proposition that "a requirement for adequate training of bus drivers . . . entwined the private bus company with the government." ECF 38 at 11. But this case is not about liability under § 1983, rather, the plaintiff in *B.F.* brought various state law claims against the defendants. *B.F.*, 2016 WL 7232370, at *1.

Plaintiff's reliance on the state function theory fares no better. Plaintiff asserts, without citation to caselaw, that "[i]n Oregon, transportation of children is a state function." ECF 38 at 11. Even assuming this were true, this bears on whether First Student, a private entity transporting students, is a state actor for § 1983 purposes, not whether PPS assumed liability for the conduct of a private entity.

### ii. Official Policy Theory

Finally, Plaintiff relies on official policy theory to state a *Monell* liability claim against PPS. Proceeding on a theory of an official policy, practice, or custom is doctrinally proper. However, "to be entitled to the presumption of truth, allegations . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff's allegations regarding policies, practices, or customs generally related the October 4, 2016 incident or any failures to train or supervise are insufficient to state a claim. These allegations are conclusory, and the Complaint lacks well-pleaded facts plausibly suggesting that these alleged policies, practices, and customs exist. Plaintiff states he is "aware of one specific incident" of "Grappone engag[ing] in physically assaultive and intimidating behavior"—the October 4, 2016 incident, ECF 24 at ¶ 18, and he references one additional incident in September 2016 where Grappone picked Plaintiff up and returned him to his seat on the bus, *id.* at ¶ 66. However, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*," *Gant*, 772 F.3d at 618 (internal quotation marks and citation

omitted), nor are "isolated or sporadic incidents." *Trevino*, 99 F.3d at 918.[14] Nor has Plaintiff

argued that this single incident of misconduct falls within the "narrow range of circumstances" in

which single-incident liability has been found. *See Bryan Cnty.*, 520 U.S. at 409.

### 2. State Law Claims

#### a. Negligence

PPS Defendants move to dismiss Plaintiff's negligence claim, count 3.1, against them on

the basis that it is time-barred, that this Court lacks subject-matter jurisdiction, and that it fails to

state a claim against PPS Defendants. ECF 27 at 24.

PPS Defendants and Plaintiff agree that the Oregon Tort Claims Act ("OTCA") applies

and that the OTCA requires minor plaintiffs—as is the case here—to file a tort claim notice

within 270 days of the date the plaintiff or guardian knew of or should have known of the alleged

unlawful conduct. ECF 27 at 25; ECF 38 at 17; O.R.S. 30.275(2)(b); *Catt v. Dep't of Hum.*

*Servs. ex rel. State*, 251 Or. App. 488, 500 (2012) ("[U]nder ORS 30.275(2), minors are required

to give notice of a tort claim to a public body and its employees within 270 days of the discovery

---

[14] Plaintiff attempts to supplement the incidents by pleading that upon information and belief, Grappone "likely was assaultive to [Plaintiff] on prior occasions." ECF 24 at ¶ 18. Though the Ninth Circuit has found that the pleading standard set forth in *Iqbal* and *Twombly* does not prevent a plaintiff from pleading facts based on information and belief, the court explained that this applies "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted). The relevant facts regarding an alleged pattern of assault on Plaintiff by Grappone are not known only by Defendants—Plaintiff himself would be in possession of any such facts—and conclusory allegations are insufficient to state a claim. *See id.* at 928–29 (allowing such pleading in a § 1983 case "[b]ecause many of the relevant facts here are known only to the defendant"). Moreover, Plaintiff includes no factual allegations as to conduct related to other students or by other bus drivers which may indicate a widespread policy, practice, or custom. *See Pozos Leon v. Tillamook Cnty. Sch. Dist.*, No. 3:17-440-PK, 2018 WL 2175949, at *7 (D. Or. May 11, 2018) (noting that the school district and its employees "knew that these policies were not being followed and that similar incidents to what happened to [the child] happen 'four or five times a year.'")

of their alleged injuries, and ORS 12.160 does not toll this notice period."). Failure to provide timely notice under the OTCA "deprives a plaintiff of the right to make a claim." *Orr v. City of Eugene*, 151 Or. App. 541, 543 (1997). The statute of limitations for negligence claims, under Oregon law, is two years. O.R.S. 12.110(1). "[U]nder Oregon law, a negligence cause of action accrues 'when all of the facts exist that the plaintiff must prove in order to recover on the claim.'" *Camarata v. Portland Cmty. Coll.*, No. 3:19-cv-00738-HZ, 2020 WL 6323932, at *3 (D. Or. Oct. 25, 2020) (quoting *Murphy v. Allstate Ins. Co.*, 251 Or. App. 316, 321 (2012)).

"[T]he limitations period begins to run as to each defendant when the plaintiff discovers, or a reasonable person should have discovered" the misconduct. *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 292 (2008). "Generally speaking, the factual determination of when a reasonable person would have been aware of the substantial possibility of the elements of a claim is a jury question." *Turner v. State ex rel. Dep't of Transp.*, 270 Or. App. 353, 359 (2015), *aff'd sub nom. Turner v. State*, 359 Or. 644 (2016). "Application of the discovery accrual rule is a factual issue for the jury unless the only conclusion a reasonable jury could reach is that plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Id.* (internal quotation marks and citation omitted).

Plaintiff pleads that the tort claim notice was timely because Plaintiff "divulged the assault to [Walker] between December 21, 2019 and January 5, 2020" and the tort claim notice was submitted to PPS on May 29, 2020. ECF 24 at ¶ 10. Plaintiff contends that prior to that time, Walker "was under the impression that [Plaintiff's] experiences on the bus were due solely to student-on-student bullying" and that she was "not aware at the time of Grappone's assaults on [Plaintiff]." ECF 24 at ¶ 11. PPS Defendants argue Walker in fact learned of the alleged misconduct by November 2016 when she received the transcript of the October 4, 2016 incident

footage and "at the latest" by March 2017, when she received that last two transcripts of the video surveillance footage, which would require claim notice by December 2017. ECF 27 at 26.

A reasonable person, in Walker's circumstances, reviewing the transcript from November 2016 should have discovered Grappone's alleged misconduct based on the transcript.[15] *Compare* ECF 24 at ¶ 73 (alleging Grappone presses his body against Plaintiff and Plaintiff "screams and cries 'Let go of me, I can't breathe!'") *with* ECF 28-1, Ex. 1, at 9 (transcribing "I can't breath! Let go of me" and "Driver steps back and loses grips"). *Compare* ECF 24 at ¶ 74 ("[Plaintiff] screams 'You are hurting me!' and Grappone says 'No I am not, I am just holding your legs down.'") *with* ECF 28-1, Ex. 1, at 10 (transcribing "I'm not hurting you. I'm just holding your legs down" and "You're hurting me"). *Compare* ECF 24 at ¶ 75 (alleging Grappone holds Plaintiff's wrists in a "pincer hold" but says he is only "restraining him very lightly") *with* ECF 28-1, Ex. 1, at 10 (transcribing that Grappone states he is "restraining him very lightly" and is "hold[ing] both of [Plaintiff's] hands"). These are critical facts in Plaintiff's Complaint which are reflected in the transcript received in November 2016. A reasonable person in Walker's position would have been aware of the substantial possibility of the elements of the claims were met upon reading the transcript. Accordingly, the OTCA notice was not timely filed, and this claim is dismissed.

---

[15] This Court finds the transcript provided to Walker in November 2016, filed with the Motion to Dismiss as Exhibit 1, ECF 28-1, to be incorporated by reference in the Complaint. "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id*. In order for a document to be incorporated by reference, it must form the basis of the plaintiff's claim or the plaintiff must refer to it "extensively," which mean more than "the mere mention of the existence of the document." *Id*. (internal quotation marks and citation omitted). Here, the Complaint refers to the document extensively and it is central to Plaintiff's claim. *See, e.g.*, ECF 24 at ¶¶ 50–53, 55, 83.

### b. Spoliation

Plaintiff brings two claims of negligent or intentional concealment of evidence or spoilation of evidence against PPS Defendants. ECF 24 at ¶¶ 301–20 (counts 7.1 and 7.2). Though the Oregon Court of Appeals has suggested that such claims may exist, without delineating their precise contours, the Oregon Supreme Court has not definitively ruled on whether spoliation of evidence is an independent cause of action under Oregon law. *See, e.g.*, *Marcum v. Adventist Health Sys./W.*, 215 Or. App. 166, 191 (2007), *rev'd on other grounds,* 345 Or. 237 (2008); *Classen v. Arete NW, LLC*, 254 Or. App. 216, 222 (2012). At least one court in this district has concluded that were the Supreme Court to confront the question, it "would not recognize a tort of intentional spoliation of evidence." *Blincoe v. W. States Chiropractic Coll.*, No. CV 06-998-PK, 2007 WL 2071916, at *8 (D. Or. July 14, 2007). This Court agrees with the analysis in *Blincoe*, and dismisses this claim.

## CONCLUSION

This Court GRANTS IN PART and DENIES IN PART First Student's Motion to Dismiss, ECF 30, and GRANTS PPS Defendants' Motion to Dismiss, ECF 27. As explained above, this Court GRANTS leave to amend as to certain claims, and Plaintiff has fourteen days from this issuance of this Opinion to cure the specific deficiencies identified herein. This Court reserves ruling on Plaintiff's motion to deem service on Grappone sufficient, ECF 20. This Court ORDERS supplemental briefing on (1) whether Defendant First Student has standing to challenge Plaintiff's service of Grappone; and (2) whether the circumstances surrounding Plaintiff's attempt to serve were reasonably calculated to apprise Grappone of the existence and pendency of this action. Defendant's supplemental brief (limited to eight pages) is due seven days after the date of this Order. Plaintiff's response is due seven days after Defendant's brief.

**IT IS SO ORDERED**.

DATED this 12th day of August, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge